The first case we'll take up is Kaur v. McKaysey. I think you have, this is the three petitions that are consolidated. All right. Thank you. Good morning. May it please the Court, Christopher Stender appearing before the petitioners. I'd like to reserve two minutes for rebuttal. This is an immigration case that should be remanded because of ineffective assistance of counsel by the prior counsel, Attorney Kang, and also by mistakes made by the Board of Immigration Appeals. Reopening was warranted because the petitioners were provided with ineffective assistance of counsel. The Fifth Amendment does guarantee due process of law, and it applies to representation in immigration court proceedings. Ineffective assistance of counsel will be found where counsel fails to perform with sufficient competence and counsel's performance was so inadequate that it affects the outcome of the proceedings. Prior counsel, Attorney Kang, failed to do, made five major mistakes after reviewing the record. First of all, he failed to meaningfully address the credibility issue in his brief to the asylum, which was filed by the immigration judge and the BIA, and that precluded the BIA and the immigration judge from considering asylum. Three, he failed to address withholding of removal and the eligibility for it. Four, he failed to address convention against torture eligibility in his brief in any meaningful way. And five, his failure to raise these issues precludes judicial review on them under the exhaustion argument. And, in fact, the initial brief filed by the Office of Immigration and Litigation, in fact, cited the failure to exhaust these arguments before the Board as a reason why the Ninth Circuit would be deprived of jurisdiction in reviewing those issues. And so would you explain that there's two petitioners and one of them is the son, Vikram. There was a reissuance of an order, and we're reviewing that order as to him, and what are we reviewing as to the mother? Right. What you have, it's a mother and son. The mother's case went up on appeal directly from Attorney Kang. What he failed to do was file a, or include the son in the petition for review. What the Board did is when we filed the motion to reopen, they did find that Attorney Kang was acknowledging the prior counsel's ineffectiveness. Yes. In the final paragraph, what they did is they issued a decision which was exactly the same for the mother and the son, except for the last paragraph where they found that the failure to include the son in the initial petition for review was ineffective assistance of counsel. They reissued only to the son, but that gave us the 30-day period in order to file a petition for review before the Court. And that is, jurisdictionally, is pending before the Court also. What do we do with the statement of the Board that it really doesn't matter that he was, if he was ineffective in raising these things, because we would still deny relief on the strength of what occurred before the immigration judge? Well, I suppose what that does, it leaves the petitioners, in effect, in relying on the good graces of the Board of Immigration Appeals to ferret out the issues and to fully consider the case from the petitioner's point of view. Certainly the Board is a neutral arbiter, and they're not going to advocate the position for the petitioners. And the failure of Attorney Kang to do that certainly is prejudicial. Why aren't you also raising the ineffectiveness in his preparation before the Court? I mean, you know, they found him incredible, but it strikes me a lot of things that they found her incredible, excuse me. A competent lawyer could have done a decent job of making a record that would make their findings even less supportable. Well, I absolutely agree. In reviewing the record and some of the issues cited by the immigration judge as reasons why he found lack of support for the petitioner, and when I say petitioner, it's the mother. She's the only person that testified at the hearing. It's a poor record. There are no follow-up questions to clarify some of the issues. For example, the immigration judge made an issue that she was administered a test, a pregnancy test, about a week after the rape, and the judge speculates, saying, well, you know, the court is unaware of any test that could be administered within a week of a rape to find whether a person was pregnant or not. But if you go back and look at the administrative record, the questioning, it's not really ‑‑ she never anchors that event, really, to any particular time period. It's discussed in context of her hospital stay, which lasted for one week, but there's an assumption that the pregnancy test was administered during the hospital stay. The immigration judge kind of runs with that, and that's never challenged. I agree wholeheartedly, Judge Trager, that the record is a poor record. The focus of the brief has been the shortcomings of Attorney King at the Board of Immigration Appeals. I did notice the oil attorney's footnote saying that there's not a challenge to the record. Looking at our motion to reopen in front of the BIA, I think as broadly as possible, what we had to work with on the appellate issues were the record, and we could see clearly that Attorney King didn't raise all these issues, these foundational issues, which gave the Ninth Circuit, or would give the Ninth Circuit jurisdiction to consider them. But I would agree that there is a lack of development of the record across the board here. There's about 100 pages in the administrative record for the entire hearing. In what facet? I mean, the asylum was off the board as far as the immigration judge was considered for two reasons. One was the one-year issue. He said, well, you haven't made the one year, so I'm not even going to consider it. But two, I'm going to find that the record is not credible, and he cites specific instances. But if we find that there's lack of support for the basic credibility issue, doesn't that really reopen that in the asylum issue as well? If you find that there's no substantial support or error in their finding about lack of credibility, doesn't that infect the asylum issue, too? Well, yes, because the lack of credibility was a reason why the judge found that the petitioner didn't make the one-year issue. It all comes down to credibility. Moving that aside for a second on the asylum, if you look at the withholding and the CAT claim, credibility doesn't come into play. And I think that's what the glaring problem here in this case is. Attorney King doesn't really address withholding and CAT. The BIA ignores it in their first decision in 2004 denying the petitions. Doesn't really address the issue in any meaningful way. And what the immigration judge says in his decision is, I found her incredible, and because she's incredible, I'm going to deny withholding and CAT also, which is a clear error of law of this circuit and also the Seventh Circuit, and that's cited in our brief in the final point. Counsel, let's talk about the one-year bar, because that also seems to affect the – our jurisdiction and our jurisdiction. And the asylum claim in particular. But isn't it correct that all of the dates that were allegedly inconsistent were within one year of the filing of the asylum application? All of them were, right? Yes. So even if you looked at all the varying dates, you could conclude that the claim was timely, couldn't you? Yes. In fact, we argued that in our brief. The judge looks at something that he considers a very negative piece of evidence, which was her bank passbook, saying, well, there's transactions in your banking account in India in January 2001. The asylum application is filed August 31st, 2001. But he false that, saying, well, I'm going to use that to find you incredible. But yet, if he found that evidence to be credible evidence, it clearly shows that she filed within one year of the filing of the asylum application. So in a way, he can't find that to be credible evidence and then at the same time use it to deny her on the one-year bar. I think what we pointed out in our brief is she testified that there were some transactions that her father did, that she had left some checks, and then he put some deposits or made some transactions, and that's why those transactions occur in January 2001. But she could have certainly taken that evidence and said, hey, here's proof that I was in India, and now I'm here August 31st, 2001, so I make the one year. She didn't do that because she testified credibly that that was her father's actions. But looking at it, by any definition, it clearly shows she filed within one year. That's what the evidence proves, and it's hard, I'm hard- pressed to see it any other way. I would also like to point out that the board's failure to address the withholding and the CAT claim really requires a remand. The petitioner cannot be denied CAT relief, as I've already stated. The petitioner cannot be denied CAT relief, as I've already stated, based on an adverse credibility finding made in the asylum context. That's exactly what happened here. That's clearly against circuit precedent. A remand is required to provide the board an opportunity to rule on the petitioner's applications for withholding in CAT. What we're asking this Court to do is remand the case because of the ineffective assistance of counsel of Attorney Kang, and also the mistakes made by the Board of Immigration Appeals in their decisions, and also, ultimately, the immigration judge in considering the record. Thank you. Thank you, counsel. Good morning, Your Honors. America Miles for the respondent, Attorney General. To address the first, the asylum one-year issue and this Court's lack of jurisdiction from the government's point of view, Ms. Cower's date of entry is, in fact, a disputed fact because DHS did not accept her proffered date of entry. And she did not establish whether or not she claims that all of the dates at issue, as you ask counsel, were within that one-year time frame. That is not a fact that's been established in this record. We have no idea when she actually left India, when she actually left the United States, or when she actually left Canada. Is there anything in the record that would indicate that any of those dates were outside of a year? No. None of those dates that she proffered were outside. Yes. So all the dates that she proffered were within a year, right? Correct. Yes. So isn't it an undisputed fact that whichever date you accept it was within the year? No, because DHS did not, and the immigration judge did not believe that any of those dates that she was providing were true. She provided no evidence to show that she actually did any of those things within those dates. She didn't show when she actually left India. For all we know, she might have left India in May of 99 or in June. This brings me back to the question I asked counsel. Doesn't this impact or relate to the question of the competency of counsel in preparing her and the way the hearing went forward? You have a competent lawyer, you know, you find some corroboration, you work and try to develop some corroboration so that the I.J. hopefully will accept it, or if not, you have a basis for overturning the I.J.'s finding. I mean, it strikes me the incompetence infects the entire proceedings. Well, as noted earlier, Ms. Cower has not challenged that her proceedings before the immigration judge were flawed or that counsel was incompetent at that point. The only arguments raised in the motion to reopen was the inadequacy of the brief before the board. And as the record reflects... And not Mr. Stender, another interim attorney. So there have been several different attorneys along the way. It might have been a Ms. Salazar in relation with Mr. Stender. But regardless, the record shows that she was fully questioned about the timing, when she left India, when she arrived in Canada, how long she stayed there, when she came into the United States. As much as could have been elicited from her was, it just wasn't credible because she didn't establish it with any other corroboration. And the rest of her testimony was inconsistent. It was inconsistent internally and with her other documentation. Therefore, the immigration judge had no way of gauging what was true and what was not. Based on her own answers and her own proffered documentation. For example, we have the fact that she clearly claimed eventually that she had a valid passport, didn't bring it with her, and said she had a photocopy in the United States that she gave to her attorney. She didn't explain why she didn't submit it to the immigration judge. There was no explanation ever at that point for her to establish. It's hard for me to say, okay, he was incompetent when he filed the appeal, but he wasn't incompetent when he was representing her before the IJ. We don't know that she actually did give a photocopy to her attorney. She just eventually, after trying to claim, oh, it's still in India, oh, I don't know, she didn't submit it to the immigration judge. It's typically consistent to travel under documentation that doesn't have your real name when you're trying to escape persecution. I think we've held that. That's true, however, she was in another area of India for a year since the incident that occurred that she was supposedly fleeing. She didn't have any incident for about a year's time before leaving India. She knew she was leaving India for the purpose of applying for asylum. It wasn't an immediate flight from harm. She hadn't been harmed. She had no incidents for a year's time. And the BIA and the IJ, neither of them mentioned that year, did they, that her year of unmolested living at the end of her life? Oh, they did mention it. The immigration judge mentioned that she lived for a year at her sister's home, I believe, in that other region. Did he rely on that at all, or he never got to it, I guess? I'm sorry? Did he rely on that as part of his reason for denial, or did he just he just never got that far? Did he once he determined he had some alternative holdings and he mentioned it in the alternative holding. But he did mention it in conjunction with not under not her not providing a sufficient explanation why she didn't provide her passport. The passport would show identity, but it wouldn't it wouldn't show anything about when she left India. Right. And we have other we have several other pieces of documentation in the record that if you if you examine them, they just do not corroborate her story. And in fact, in some ways, they're inconsistent with her own testimony. She she mentions this letter from her doctor. There's no mention of of a rape, which even putting that aside, she also mentioned that she had physical manifestations such as bruising, that she stayed in the hospital for one week for treatment. The letter does not mention that she was admitted into the hospital, that she was there for a week. It doesn't mention any bruising. It only mentions that she was treated for depression. That's it. So it doesn't really corroborate. She used it to corroborate that she was raped and sought treatment for a rape. The letter doesn't support that at all. She also submitted a letter from the political organization she claimed she was a member of. But yet she also said that her husband was a leader in the organization. And together, the organization, the husband decided she needed to leave. Letter doesn't mention that her husband was a member. Their husband was a leader. Doesn't mention that the organization was pivotal in getting her out of jail. It doesn't mention that they recommended that she leave the country. It doesn't support anything like that. Same thing, her father's affidavit mentions that the husband had been arrested along with the brother-in-law. Doesn't mention that the brother-in-law was killed, that he died as a result. There's no mention that Mr. Singh died. It also doesn't mention that his own daughter was a member of the political organization. Doesn't mention that he saw bruising on her face, which she claimed was there and visible, even though he's the one that got her out of jail and picked her up. Doesn't mention that she had to stay in the hospital for a week as a result of her being in jail. None of this supports it. These are material omissions regarding fundamental aspects of her claims. You say this is really wonderful and effective, except that I can't get it over the fact that on the other side of, you know, representing her as a lawyer ultimately is disbarred by this court. I mean, you probably spent probably two seconds preparing her and doing, you know, getting the, you know, so you can, you know, and never, you know, dealing with these issues or inconsistencies at the hearing. Certainly. I understand the court's point of view, but ultimately the record reflects that this individual had a very full and fair hearing before the immigration judge, thorough questioning by her attorney, by DHS counsel and by the immigration judge during her hearing, and also before the board. We don't just have a summary affirmance here, as this case is found when there's this, when you've found presumption of prejudice, which we fully contest here that there should be an application of presumption of prejudice. Here we have a three-member panel decision by the board. It's not a single member. It's not a summary affirmance. Are you telling us that when it's a single member, we should give it less credibility? No, I'm just, I'm just emphasizing that this is not a summary dismissal. We had three individuals reviewing this. It was, it was not, she had full and meaningful appellate review by the board. The board stated that there was no clear error by the immigration judge and cited examples. Didn't the board misstate the standard for prejudice to make out a due process violation? Didn't it misstate and misapply the standard? I don't have the board decision. I have to check. Well, basically, the BIA says that to show prejudice, you must show that the deficiency did affect the outcome. But our case law says that you need only show that it may have affected the outcome. Could have, yeah, may have. Regardless, the board's decision demonstrates that they did not find that. Regardless of whether or not this is a mincing of words. It's not a mincing, it's a completely different standard. One is that it did in fact affect the outcome. The other is it may have. You do see the difference in that standard. It's not a mincing of words. Yes, I see a difference. And I would advance that that is, that would be harmless error by the board. Because here the board found that they provided her with a full and fair adjudication during her appeal. And it concluded that the immigration judge did not commit clear error. So she could not demonstrate that the outcome would have been different had. That would have been, may have been. May have been. There's a degree of certainty there that's the difference. Well, here they found that there was no way that, based on their own previous determination on appeal, that there was no way. Even though the standard is may, they found that she was unable, because of its previous adjudication, finding that the immigration judge did not commit error in denying her applications. All right. Thank you. Thank you. Yes, I'll go ahead, please. Somebody sent some papers about he's reviewing this whole issue of incompetence. How does that impact here at all? Sure. That's fully up to this Court to determine whether or not you're equipped with everything to adjudicate this case. Certainly it's your prerogative to hold this case pending the attorney general's disposition on the ineffective assistance issue, determining whether or not there is a due process right involved, whether or not regardless of a due process right, whether or not the agency has the ability to determine that there's been ineffective assistance as a matter of discretion. And also it's possible that the attorney general might determine standards such as what is the proper level or showing of prejudice. So those are the questions before the attorney general right now. He hasn't made a decision yet, but we think one's forthcoming. So it's certainly this Court may choose to hold the case for that. Thank you.
judges: Canby, Wardlaw, Trager